IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD DAVIS,<br><br>*Defendant*. | Case No. 3:23-cr-135<br><br>Health Care Fraud<br>18 U.S.C. §§ 1347 and 2<br>(Counts One through Six)<br><br>Forfeiture Allegation |

## INDICTMENT

October 2023 Term – At Richmond, Virginia

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

At all times relevant to the Indictment:

1. The Medicaid program was established by Title 19, Social Security Act of 1965, to provide medical assistance to indigent persons. The United States Department of Health and Human Services and the Commonwealth of Virginia, Department of Medical Assistance Services ("DMAS"), administer and supervise the administration of the Medicaid program in Virginia, which is called the Virginia Medical Assistance Program ("Medicaid"). The Federal and state governments jointly provide funding for Medicaid.

2. Medicaid is a "health care benefit program" as defined in 18 U.S.C. § 24(b).

3. Therapeutic Day Treatment ("TDT") is a mental health program for children and adolescents offered to Medicaid recipients in Virginia. TDT services include psychotherapeutic interventions combined with evaluation, medication education and management, opportunities to learn and use daily skills and to enhance social and interpersonal skills, and individual, group, and family counseling offered in programs of two or more hours per day. Many TDT programs are

1

administered in the form of an after-school program.

4. TDT services are calculated and reimbursed in unit measurements of time per day. Specifically, one unit comprises 1 to 2.99 hours of service; two units comprises 3 to 4.99 hours of service; and three units comprises 5 or more hours of service in a day.

5. Intensive In-Home ("IIH") services are designed to be targeted, intensive, and time-limited interventions for children who are at risk of being removed from their home (or transitioning home after a removal) due to a significant behavioral or mental health issue. The service is designed to correct, modify, or heal a significant mental health issue before that issue results in a child being removed from the home.

6. Medicaid will reimburse providers for up to 10 hours of IIH services per recipient per week.

7. Providers must be licensed by Virginia Department of Behavioral Health and Developmental Services ("Department of Behavioral Health"). For TDT and IIH services, the provider shall employ Licensed Mental Health Professionals ("LMHP") or Qualified Mental Health Professionals ("QMHP") operating under the supervision of an LMHP. An LMHP typically possesses an advanced degree related to the provision of mental health services, while the qualifications to become a QMHP are minimal. Many of the Medicaid treatment programs are supervised by an LMHP but administered by a QMHP.

8. To be eligible for Medicaid reimbursement, TDT services must be provided in person, by either an LMHP or QMHP operating under the supervision of an LMHP, at a location approved and licensed by the Department of Behavioral Health, such as in a school or another facility. Sessions must be documented through a daily log of time that provides details about the delivery of services to the recipient, including a description of what occurred during the entire

amount of time billed.

9. To be eligible for Medicaid reimbursement, IIH services must be provided in person, by either an LMHP or QMHP operating under the supervision of a LMHP. Sessions must be documented through a daily log of time that provides details about the delivery of services to the IIH recipient, including a description of what occurred during the entire amount of time billed.

10. Magellan Behavioral Health of Virginia ("Magellan") is Medicaid's contractor in Virginia; Magellan manages Medicaid-reimbursed behavioral health programs, including TDT and IIH. Among other things, Magellan, along with managed care organizations, makes Medicaid payments to authorized providers for qualifying Medicaid services, including TDT and IIH.

11. Providers are required to sign a participation agreement, and thereby agree to retain all relevant records that Medicaid requires. Additionally, providers sign a provider agreement with Medicaid and Magellan agreeing to both adhere to the policies and regulations explained in the Community Mental Health Rehabilitation Services provider manual, and to ensure that all the provider's employees adhere to these same policies and regulations. Magellan serves as the behavioral health services administrator for Medicaid. Medicaid retains authority for and oversight of Magellan entity or entities. Magellan is authorized to process claims, reimburse providers, and maintain data.

12. To receive reimbursement for covered services as set forth in the provider manual, Medicaid providers typically submit reimbursement claims electronically, routing those claims directly to Magellan's or a managed care organizations' website for reimbursement.

13. The defendant, RICHARD DAVIS, has solely owned and operated Innovative Family Services, LLC, ("IFS") since at least 2015 through at least June 2023. From at least in or about December 2015, through at least in or about July 2019, IFS offered TDT and IIH services

for which it received Medicaid reimbursements from Magellan and MCOs which were ultimately deposited in bank accounts controlled by the defendant.

## COUNTS 1 - 6
(Health Care Fraud)

14. The allegations in paragraphs 1 through 13 of this Indictment are re-alleged and incorporated as though set forth in full here.

15. From in or about December 2015, through in or about July 2019, in the Eastern District of Virginia and the within the jurisdiction of this court, the defendant, RICHARD DAVIS, did knowingly and willfully execute and attempt to execute a scheme and artifice to commit health care fraud, that is, to devise a scheme or artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money owned by, and under the custody and control of Virginia Medicaid, a health care benefit program as defined by Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

**The Scheme and Artifice**

16. The object of the scheme and artifice was for RICHARD DAVIS to unlawfully enrich himself by submitting to Magellan claims for reimbursement of TDT and IIH services that did not actually occur, or did not meet reimbursement requirements.

17. Beginning in at least December 2015 and continuing through at least July 2019, in the Eastern District of Virginia, within the jurisdiction of this court, the defendant knowingly executed and attempted to execute a scheme and artifice (a) to defraud Medicaid, and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicaid, in connection with the delivery

of and payment for health care benefits and services.

18. To accomplish this, it was part of the scheme and artifice that the defendant (a) knowingly and deliberately submitted billing that falsely reflected Medicaid recipients' attendance at IFS's TDT program on dates when those recipients were not, in fact, present; (b) caused IFS employees to bill for the maximum allowable service units per day for care coordination for Medicaid recipients whose school hours precluded them from attending such services for the full amount of time that IFS billed; and (c) caused IFS employees to bill for overlapping services when this was prohibited by Medicaid rules and regulations. In these ways, the defendant caused the submission of knowingly false claims for reimbursement.

19. It was further part of the scheme and artifice that the defendant also caused others, including IFS employees, to create false progress notes reflecting Medicaid recipients' receipt of TDT and IIH services on certain dates and for the full amount of time billed, because the amount of time billed was more than was actually provided or the service was not rendered at all. In particular, DAVIS instructed his employees to maximize billing by creating false progress notes reflecting that IFS employees had provided billable therapy services when in fact no such eligible services were performed.  DAVIS also instructed IFS employees to bill such activities as care coordination and transportation to and from TDT as actual face-to-face therapy, when—as DAVIS well knew and understood—such logistical and transportation activities were not reimbursable.

20. IFS kept and maintained these false progress notes in Medicaid recipients' files.

21. It was further part of the scheme and artifice that, through the submission of these knowingly false claims, the defendant received from Magellan and managed care organizations Medicaid funds to which IFS was not entitled for TDT and IIH services that IFS did not provide.

22. On or about the dates noted below, in the Eastern District of Virginia, for the

purpose of executing the above-described scheme and artifice to defraud, RICHARD DAVIS, aided and abetted by others, knowingly submitted, and caused to be submitted, the following false claims to Medicaid, each of which falsely and fraudulently represented that services had actually been rendered consistent with Medicaid requirements, when in truth and fact, as DAVIS well knew, the services had not been rendered in compliance with Medicaid requirements:

| Count | Date (On or About) | Description of Execution |
|---|---|---|
| 1 | May 25, 2018 | The defendant submitted and caused to be submitted to Magellan and/or MCOs a billing service log that included false claims for TDT services not actually rendered to Medicaid recipient S.M. because S.M. was absent from school on the day that those services were purportedly provided. |
| 2 | June 21, 2019 | The defendant submitted and caused to be submitted to Magellan and/or MCOs a billing service log that included false claims for TDT services not actually rendered to Medicaid recipient A.P. because A.P. was absent from school on the day that those services were purportedly provided. |
| 3 | April 30, 2018 | The defendant submitted and caused to be submitted to Magellan and/or MCOs a billing service log that included false claims for TDT services not actually rendered to Medicaid recipient A.J. because care coordination was not rendered |
| 4 | May 9, 2018 | The defendant submitted and caused to be submitted to Magellan and/or MCOs a billing service log that included false claims for TDT services not actually rendered to Medicaid recipient J.R. because care coordination was not rendered |
| 5 | April 23, 2018 | The defendant submitted and caused to be submitted to Magellan and/or MCOs a billing service log that falsely claimed that Medicaid recipient D.T. had received both TDT and IIH services at the same time, an occurrence which is not permissible under Medicaid rules and regulations. |
| 6 | December 26, 2018 | The defendant submitted and caused to be submitted to Magellan and/or MCOs a billing service log that falsely claimed that Medicaid recipient A.P. had received both TDT and IIH services at the same time, an occurrence which is not permissible under Medicaid rules and regulations. |

23. Over the course of the above-described scheme and artifice to defraud, the defendant caused monetary losses to Medicaid in the amount of at least $218,392.49.

(In violation of Title 18, United States Code, Sections 1347 and 2).

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) Fed. R. Crim. P., the defendant is hereby notified that upon the conviction of any of the offenses listed in Counts One through Six of this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

Property subject to forfeiture includes, but is not limited to:

**The sum of at least $218,392.49, representing the gross proceeds of the offenses charged in Counts One through Six, which sum shall be reduced to a monetary judgment against the defendant in favor of the United States. This is a sum for which the defendant will be solely liable.**

If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with Title 18 United States Code § 982(a)(7) and Title 21, United States Code, Section 853(p)).

A TRUE BILL:

_____
FOREPERSON

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Shea Matthew Gibbons
Assistant United States Attorney

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office