IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.      ) | Case No.   3:23cr135 (JAG) |
| ) | |
| **RICHARD DAVIS,** ) | |
| ) | |
| *Defendant*.      ) | |

### DEFENDANT'S POST-TRIAL BRIEF

The defendant, Richard Davis, by counsel, submits his post-trial brief, and asks that the Court rule that the government has the burden of proving specific intent to defraud beyond a reasonable doubt under 18 U.S.C. § 1347; that the government has failed to sustain its burden of proof; and, therefore, find that Mr. Davis is not guilty of Counts 3 and 4 of the indictment.

   A. *Background*

The government attempted to prove at trial that Mr. Davis's company presented six fraudulent health care claims for payment. None of these claims bore Mr. Davis's signature, the work supporting the claims was not performed by Mr. Davis, and there was no evidence that Mr. Davis had actual knowledge of any of the six specific claims comprising the six charged counts. At the conclusion of Mr. Davis's trial, the Court announced its intention to find Mr. Davis not guilty of Counts 1, 2, 5 and 6 (counts alleging billing for health care services not rendered and double billing), but guilty of Counts 3 and 4 (improper billing for care coordination). In reaching this conclusion, the Court indicated that, under § 1347(b), it appeared that the government did not bear the burden of proving specific intent to defraud. This briefing addresses that issue. Mr. Davis submits that the government does in fact have the burden of proving that Mr. Davis had

1

the specific intent to defraud. Mr. Davis also submits that, absent a finding that government has satisfied this burden beyond a reasonable doubt, the Court cannot find Mr. Davis guilty of either Count 3 or 4.

During closing argument, the defendant urged the Court to allow him to brief the issue of specific intent, and to provide Mr. Davis the opportunity to make his case on the issue. The Court graciously agreed. As Mr. Davis will demonstrate below, the law on this matter is crystal clear. The government bears the burden of proving, as to any substantive count brought under § 1347, that the defendant acted with the specific intent to defraud. Relevant jury instructions, the legislative intent of the 2010 Amendment to § 1347, case law from the Fourth Circuit, and authority from circuits throughout the country, provide unequivocal support for this premise. No court has found to the contrary and, as far as the defendant can see, the government has never previously argued that the specific intent burden at issue does not apply under § 1347.

Mr. Davis will also demonstrate to the Court that the government failed to meet its burden of proof under the law that Mr. Davis had the requisite knowledge of the alleged false claims submitted for payment under Counts 3 and 4. One of the essential elements of proof of a violation of §1347 was that the defendant acted "knowingly." Without proof beyond a reasonable doubt that Mr. Davis knew the submitted claims were false, the government has failed to satisfy its burden of proof. Consequently, this Court should find Mr. Davis not guilty of all counts under the indictment.

### B. Elements of Proof of § 1347

Under 18 U.S.C. § 1347, the government bears the burden of proving the following:

- First, that the defendant executed or attempted to execute;
- Second, a scheme or artifice;
- Third, to obtain any money or property owned by or under the custody and control of a health care benefit program which affects commerce, by means of false or fraudulent pretenses, representations, or promises which were material;
- Fourth, in connection with the delivery of or payment for health care benefits; and
- Fifth, that the defendant did so knowingly and willfully.

The words "scheme and artifice" include any plan or course of action intended to deceive others and to obtain by either false or fraudulent pretenses, representations or promises, either money or property from persons who are so deceived. A statement or representation is false or fraudulent if known to be untrue or made with reckless indifference as to the truth or falsity and made or caused to be made with the intent to deceive or defraud.

A scheme to defraud requires that the government prove that the defendant acted with the **specific intent** to deceive or cheat for the purpose of getting financial gain for one's self or causing financial loss to another. Thus, the government must prove that the defendant intended to deceive the health care benefit program through the scheme.

    \* \* \*

To act with an "intent to defraud" means to act with a **specific intent** to deceive or cheat, ordinarily, for the purpose of either causing some financial loss to another or bringing about some financial gain to one's self. It is not necessary, however, to prove that anyone was, in fact, defrauded, as long as it is established that the defendant acted with the intent to defraud or mislead.

Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina*, 18 U.S.C. § 1347 (2024 Online Edition, p. 273-74) (emphasis added) (2020 edition cited by the government in its trial brief, ECF No. 25 at 5).

"Knowingly" is defined as follows:

"An act is done knowingly if the defendant is aware of the act and does not act [or fail to act] through ignorance, mistake, or accident. . . ."

3

Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit, Instruction No. 4.8 (2022 Edition); *United States v. Lonich*, 23 F.4th 881, 900 (9th Cir. 2022); *United States v. Tracy*, 36 F.3d 187, 195 (1st Cir. 1994); *United States v. Clark*, 799 F. App'x 946, 948–49 (8th Cir. 2020) ("'Knowingly' only 'requires proof of knowledge of the facts that constitute the offense.' *United States v. Voice*, 622 F.3d 870, 876 (8th Cir. 2010) (quoting *Bryan v. United States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998)").

### C. The Government Bears the Burden of Proving Specific Intent to Defraud under 18 U.S.C. § 1347

1. Legislative Intent of 2010 Amendment

Title 18 U.S.C. § 1347(b) provides that "[w]ith respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section."

Under § 1347(a), the terms "knowingly and willfully" establish a requirement that the government prove that a defendant acted with specific intent to defraud or misrepresent in order to prove that a defendant violated the statute. *United States v. McLean*, 715 F.3d 129, 137–38 (4th Cir. 2013); *United States v. Boccone*, 556 F. App'x 215, 237 (4th Cir. 2014); *United States v. Randolph*, 773 Fed. App'x 150 (4th Cir. 2019); *United States v. Janati,* 237 Fed. Appx. 843, 947 (4th Cir. 2007) ("The health care fraud statute requires a specific intent to defraud"); *United States v. Makarita*, 576 F. App'x 252, 263-64 (4th Cir. 2014). The amendment to this statute in 2010 did nothing to modify that burden on the government in the Fourth Circuit. As provided through the legislative history and cases construing the amendment, Congress merely clarified through the amendment that the government need not prove that the defendant was aware of, or

had "actual knowledge" of, § 1347, or had the "specific intent to violate the statute." The government still maintained the burden of proving specific intent to defraud as it had prior to the 2010 amendment, and as it had in other federal circuits with the exception of the Ninth.

Congress amended § 1347 to address a Ninth Circuit opinion that construed the "willfulness" requirement in the analogous Federal Anti–Kickback statute in a narrow and specific manner, *The Hanlester Network v. Shalala*, 51 F.3d 1390, 1400 (9th Cir.1995). This Ninth Circuit opinion was an outlier amongst all of the other federal circuits on the matter.

In *Shalala*, the Ninth Circuit found that the phrase "knowingly and willfully" requires a finding that a defendant: (1) knew that the Anti– Kickback statute prohibited offering or paying remuneration to induce referrals; and (2) engaged in prohibited conduct with the specific intent to disobey the Anti–Kickback statute. *See Shalala,* 51 F.3d at 1400. The Ninth Circuit was the only circuit to impose this strict requirement on the government. *Compare, e.g., United States Baystate Ambulance & Hospital Rental Services, Inc.,* 874 F.2d 20 (1st Cir.1989) (holding that "knowing" means to do something voluntarily or deliberately and "willfully" means to do something the law prohibits); *United States v. Jain,* 93 F.3d 436, 440–41 (8th Cir.1996) (holding that the plain language of the Anti–Kickback Statute and the traditional principle of ignorance of the law is no defense defines "willfully" to mean the defendant "knew that his conduct was wrongful, rather than proof that he knew it violated a known duty."); *United States v. Starks,* 157 F.3d 833, 837–39 (11th Cir.1998) (holding that knowledge of the Anti–Kickback statute was not required to find a violation); *United States v. Davis,* 132 F.3d 1092, 1094 (5th Cir.1998).

In 2010, Congress amended the health care fraud and antikickback statutes to codify the majority view and specifically reject the Ninth Circuit's position in *Shalala*. Congress made clear what is required to prove a violation of § 1347 and the Anti– Kickback Statute. It drafted subparagraph (b) to specifically state that the government does not need to prove that a defendant has specific knowledge of § 1347 or intent to specifically violate § 1347 in order to successfully prosecute an individual who engaged in a scheme with the intent to defraud Medicare. *See* 18 U.S.C. § 1347(b) (stating that a defendant does not need to have "actual knowledge of *this section*," i.e., § 1347, or "specific intent to commit a violation of *this section*," i.e., § 1347, in order to be liable for violating § 1347) (emphasis added). One of the amendment's authors, Senator Ted Kaufman, stated the following when he introduced the bill:

> The bill also addresses confusion in the case law over the appropriate meaning of "willful" conduct in health care fraud. Both the anti-kickback statute and the health care fraud statute include the term "willfully." In both contexts, the Ninth Circuit Court of Appeals has read the term to require proof that the defendant not only intended to engage in unlawful conduct, but also knew of the particular law in question and intended to violate that particular law. This heightened mental state requirement may be appropriate for criminal violations of hyper-technical regulations, but it is inappropriate for these crimes, which punish simple fraud. The Finance Committee health care reform bill, America's Healthy Future Act, addresses this problem for the anti-kickback statute, but not for the general health care fraud offense. Accordingly, the Health Care Fraud Enforcement Act tracks the Finance bill and clarifies that "willful conduct" in this context does not require proof that the defendant had actual knowledge of the law in question or specific intent to violate that law. As a result, health care fraudsters will not receive special protection that they don't deserve.

155 Cong. Rec. S10852–01 (daily ed. Oct. 28, 2009). To be clear, subparagraph (b) does not eliminate the *mens rea* requirement described in subparagraph (a); it clarifies it. *See United States v. Ferrell*, No. 11 CR 595, 2013 WL 2636108, at *3 (N.D. Ill. June 12, 2013), *aff'd in part,* 816 F.3d 433 (7th Cir. 2015); *see also, e.g., United States v. Mathur,* No. 11 CR 312, 2012

WL 4742833, at *14–15 (D.Nev. Sept.13, 2012) (describing legislative history of the Patient Protection and Affordable Care Act and stating that "PPACA has not removed a specific intent requirement from the Anti– Kickback Act as Mathur claims. In order to prove a violation of the Anti–Kickback Act, the government must still show that a criminal defendant acted 'knowingly and willfully". . . . The PPACA simply clarified that the government is not required to show a criminal defendant knew the AntiKickback Act prohibited offering or paying consideration to induce referrals and intended to violate the law.").

The Third Circuit articulated this legal dynamic in *United States v. Shvets*, 631 F. App'x 91, 96 (3d Cir. 2015). Under the 2010 amendment to 18 U.S.C. § 1347, the Third Circuit specifically found that the 2010 amendment in no way "represents a substantive change in the statute's *mens rea* requirement," but rather clarified that the change was targeted only at the Ninth Circuit's erroneous application of the law. *Id*. As with *Ferrell*, the Third Circuit focused on the statement of Senator Kaufman in the amendment's legislative history, and made specific reference to the Congressional Record. *Id*. ("*See* 155 Cong. Rec. S10853 (daily ed. Oct. 28, 2009) (statement of Sen. Kaufman).

The Third Circuit made clear that, "[t]he only court of appeals to find that the pre–2010 version of § 1347 or the Anti–Kickback statute required a heightened level of intent is the Ninth Circuit. *See Hanlester Network v. Shalala,* 51 F.3d 1390, 1400 (9th Cir.1995)." *Shvets* at 96. The 2010 amendment rejected the view of the Ninth Circuit and clarified the majority view. *Id*. The legislative history of the 2010 amendment to § 1347 confirms Mr. Davis's position; the government has the burden of proving specific intent to defraud.

## 2. The Fourth Circuit and Other Circuits Support Mr. Davis's Construction of §1347

The Fourth Circuit has consistently found that the government bears the burden of proving that a defendant acted with specific intent to defraud in a prosecution under § 1347. *See United States v. Janati,* 237 Fed. Appx. 843, 947 (4th Cir. 2007); *United States v. McLean*, 715 F.3d 129, 137–38 (4th Cir. 2013); *United States v. Boccone*, 556 F. App'x 215, 237 (4th Cir. 2014). At trial, the question was raised as to whether any Fourth Circuit cases with post-2010 conduct supported Mr. Davis's specific intent position. In *United States v. Randolph*, 773 Fed. App'x 150 (4th Cir. 2019), a case with post-2010 underlying criminal conduct, the Fourth Circuit articulated that the government bore the burden of proving specific intent to defraud under a §1347 prosecution.

The health care fraud conduct at issue in *Randolph* occurred between 2012-2017. *See* Case No. 2:17-cr-00302-RMG-1 (DCSC 2017), ECF No. 2, Indictment at 3 ("Beginning on or about May 20, 2012 . . . "). Additionally, the defendant in *Randolph* argued to the Fourth Circuit that his substantive health care fraud convictions under § 1347 should be dismissed because the government failed to prove specific intent. Rather than arguing that the burden was not specific intent, the government argued that they had carried their burden of proving specific intent. *See* Gov't Responsive Brief, Fourth Circuit Case No. 18-4862, Doc No. 37, pp. 6-11 (government made clear through their filing that the burden of proof under § 1347 was specific intent to defraud). And rather than finding that no such specific intent burden fell on the shoulders of the government, the Fourth Circuit found that such a burden existed and found that the government met its burden. The Fourth Circuit found that:

> Randolph contends that the court erred in denying her Rule 29 motion because the government presented insufficient evidence that Randolph acted with **specific intent** to commit the charged offenses. Intent to defraud "may be inferred from the totality of the circumstances and need not be proven by direct evidence." *United States v. Godwin,* 272 F.3d 659, 666 (4th Cir. 2001) (internal quotation marks omitted). In particular, "[i]ntent can be inferred from efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits." *United States v. Davis,* 490 F.3d 541, 549 (6th Cir. 2007) (internal quotation marks omitted).
>
> After viewing the evidence in the light most favorable to the government, we find that the evidence was sufficient for the jury to infer Randolph's intent to defraud based on her conduct.

*Randolph* at 151 (emphasis added). There can be no question that the Fourth Circuit recognizes that the government's burden of proof in a § 1347 case, following the 2010 amendments, is one of specific intent to defraud.

Other circuits that have addressed the issue have found, like the Fourth Circuit, that the government is required under § 1347 to demonstrate that the defendant acted with specific intent to defraud. *United States v. Natale*, 719 F.3d 719, 739 (7th Cir. 2013) ("the health care fraud statute requires proof of specific intent to defraud while the false statement statute requires only knowing and willful false statements."); *United States v. Cattanea*, 425 F. App'x 577, 580 (9th Cir. 2011) ("Cattanea had the specific intent to defraud Medicaid in order to maximize profits at Teton."); *United States v. Franklin–El,* 554 F.3d 903, 911 (10th Cir. 2009) ("the health care fraud statute requires a specific intent to defraud or misrepresent"); *United States v. Clay*, 832 F.3d 1259, 1301 (11th Cir. 2016) ) ("the defendants acted with 'intent to defraud,' defined as 'specific intent to deceive or cheat someone and to deprive someone of money or property'"). No

9

authority could be identified in which a federal circuit court failed to find the specific intent to defraud standard under § 1347.

> 3. <u>The Government Failed to Prove that Mr. Davis Had the Specific Intent to Devise a Scheme or Artifice to Defraud Medicaid through Unlawful Care Coordination Billing</u>

The government cannot meet its "specific intent" burden of proof under Counts 3 and 4 of the indictment. There was no evidence presented at trial that Mr. Davis instructed or directed any employees at IFS to unlawfully bill for care coordination or planning services that they did not work.  Although arguments were raised about maximum billing and about a template for billing, evidence in support of these arguments failed to rise to the level of "specific intent to defraud."  At trial, the Court drew an analogy to billing at a law firm – that, in a business like the practice of law, billing for the maximum allowable under the law is not illegal. No such distinction between what is allowable maximum billing and unlawful maximum billing was drawn in this case. No IFS employee testified that Mr. Davis ever told them to bill for planning time that they had not actually rendered preparing for a group session. No witness testified that Mr. Davis instructed them to overbill or double bill for care coordination/planning. To prove a scheme or artifice to defraud under Counts 3 and 4, with the specific intent to defraud, would require that the government prove that Mr. Davis specifically intended that his employees overbill or intentionally bill for care coordination/planning services that were not performed – not just that he intended that they maximize their billing or asked that they follow a template. No such evidence of this specific intent was presented at trial.

10

The template, presented as Exhibit 4 in relation to Count 4, was merely that – a template. Without specific instructions by Mr. Davis to bill for care coordination/planning that was not being performed – template or no template - the government fell well short of its burden to prove that Mr. Davis acted with the specific intent to defraud Medicaid by billing for care coordination/planning that was not rendered by his employees. Again, there is no evidence that Mr. Davis instructed or directed his employees to bill for time that was not performed. There must be evidence to support a finding of specific intent. No such evidence supporting a finding of specific intent to unlawfully bill for care coordination/planning was presented in this case.

As demonstrated above, the legislative history of the 2010 amendment to § 1347, and every court's treatment of the meaning of the amendment, confirms that the government must satisfy its burden of proving beyond a reasonable doubt that, under the indictment in this case, Mr. Davis had the specific intent to defraud. The government failed to meet this burden.

### D. Mr. Davis did not "Knowingly" Submit Fraudulent Health Care Claims

An essential element of proof for a charge under § 1347 is that the defendant act "knowingly." A person acts knowingly if they act with "knowledge of the facts that constitute the offense." *Dixon v. United States*, 548 U.S. 1, 5 (2006); *Bryan v. United States*, 524 U.S. 184, 193 (1998) ("knowingly" refers to knowledge of the facts constituting the offense); *United States v. Moody*, 2 F.4th 180, 198 (4th Cir. 2021) ("the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense."); *United States v. Bursey*, 416 F.3d 301, 309 (4th Cir. 2005) ("the statutory term 'knowingly' requires the Government to prove only that the defendant had knowledge of the facts underlying the offense"); *United States v. Matthews*, 209 F.3d 338, 352 (4th Cir. 2000) ("To act 'knowingly' is to act with 'knowledge of the facts that

11

constitute the offense'"); *United States v. Fuller*, 162 F.3d 256, 260 (4th Cir. 1998) (same quote as *Matthews*); *United States v. Mazumder*, 2024 WL 253655, at *2 (W.D.N.C. Jan. 23, 2024) ("A person acts knowingly if they act with 'knowledge of the facts that constitute the offense.'" – citing to *Dixon*). "An act is done knowingly if the defendant is aware of the act and does not act [or fail to act] through ignorance, mistake, or accident. . . ." Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit, Instruction No. 4.8 (2022 Edition).

To prove that Mr. Davis acted knowingly with regard to submitting fraudulent health care claims for care coordination/planning, the government was required to demonstrate that Mr. Davis had knowledge of "the facts constituting the offense," knowledge that these particular charged false claims were being submitted and filed for payment.

The government went through several iterations of proof on the matter of submitting health care claims for care coordination/planning payment. They first alleged through their expert, Laura Reed, that billing for care coordination/planning was not permitted under the law. The defendant showed the Court that such billing was in fact authorized under the DMAS manual. Then the government argued that billing for care coordination/planning as a group was unlawful. The defendant pointed out that nothing in the DMAS manual precluded such billing. Finally, the government settled on the premise that Mr. Davis's company was billing for care coordination/planning that was not rendered. That became the focal point for Counts 3 and 4.

The indictment charging Mr. Davis with health care fraud alleged at Paragraph 22 that Mr. Davis "**knowingly** submitted and caused to be submitted, the following false claims to Medicaid, each of which falsely and fraudulently represented that services had actually been rendered consistent with Medicaid requirements, when truth in fact, *as DAVIS well knew*, the

12

services had not been rendered in compliance with Medicaid requirements." (emphasis added) The indictment then listed the six charged claims. Thus, in its charging document, the government alleged actual knowledge by Mr. Davis of the six individual claims. This Court must hold the government to the burden it articulated through its indictment and to the burden required by law: proof beyond a reasonable doubt that Mr. Davis had actual knowledge of the false claims submitted.

To act with the requisite knowledge as charged in the indictment and required under the law, the defendant must be shown to have known that the alleged false representations or claims in each claim under each charge at issue were in fact false. *See Dixon* and *Bryan.* The government failed to meet its burden of proof with either Count 3 or Count 4, the claims involving witnesses Hazel Bell and Kasi Loney. Mr. Davis's signature did not appear on these claims or progress notes; he did not provide the services rendered (or not rendered); he was not shown to have reviewed the progress notes; and he was not in the chain of approval for submitting these claims for payment. Mr. Davis clearly did not know that the two hours billed by Hazel Bell under Count 4 for care coordination/planning when she was at school teaching her class were not actually performed or rendered. *See* Govt Ex. 4. He also had no knowledge of services performed by Ms. Loney for the 8 hours billed under Count 3. *See* Govt Ex. 6. The only witnesses to testify as to the truth or falsity of these claims were government witnesses, Hazel Bell and Kasi Loney. Neither of these witnesses indicated that Mr. Davis had any actual knowledge of these alleged false claims.

To the contrary, Ms. Bell made clear that Mr. Davis *did not know* that she had failed to perform the two hours of care coordination/planning time as provided in the progress notes in Ex. 4. She testified that she likely did not conduct 2 hours of care coordination because she was a full-time teacher and did not have time in her day to perform the 2 hours billed during her teaching hours. She also testified, however, that Mr. Davis fully expected her to work those 2 hours conducting care coordination/planning while she was teaching. And she stated that had Mr. Davis known she did not have time in her teaching day to complete the two hours of planning, he would not have allowed it. This count of the indictment, Count 4, cannot possibly be a knowing, willful violation of the law if the government's witness specifically stated that the defendant would never have allowed the improper care coordination/planning billing under these circumstances. Mr. Davis expected Ms. Bell to perform those hours of service as billed. He did not know that she failed to work those hours; had he known, according to Ms. Bell, he never would have endorsed or approved of the submission of such a claim for payment.

Under Count 3, Mr. Davis knew nothing of Kasi Loney's April 30, 2018 bill for eight hours – 11:30 a.m. to 7:30 p.m. *See* Ex. 6. He certainly had no knowledge that Ms. Loney had not performed two hours of care coordination/planning on that date. He could not possibly have known this being so far removed from the operations of the Hopewell office in 2018. Witnesses testified he never came to that office in 2018. Ms. Loney received all of her instructions from supervisor, Korrin Carter, who began her work with IFS in 2017. Although evidence was presented that Mr. Davis instructed counselors to "max bill," there was no evidence that he instructed or directed them to bill unlawfully or to overbill.

Kasi Loney testified that she would normally bill for 8 hours a day, 11:30 a.m. to 7:30 p.m. *See* Ex. 6. This was not the "template" that Mr. Davis was alleged to have promoted through his leadership. The Hazel Bell template – billing 11:30 a.m. to 1:30 p.m., and then 3:00 p.m. to 7:00 p.m., six hours of billing - was the template allegedly promoted by Mr. Davis. *See* Ex. 4. There were not two templates discussed by the witnesses. Although Ms. Loney may have testified that she did not necessarily provide 8 hours of service to her clients on each given day of service, she did provide a substantial period of treatment and she did conduct planning for all of the treatment she provided, as is required to effectively provide counseling services to the children. To my recollection, Ms. Loney never specifically stated how much care coordination or planning she actually conducted on April 30, 2018. Consequently, the government's evidence falls well short of the mark required for proof beyond a reasonable doubt that care coordination/ planning was not provided on this date, April 30, 2018, as billed to Medicaid (or a full three units of service was not justified for Medicaid payment). Significantly, Mr. Davis had no knowledge of Ms. Loney's claim submitted for payment on April 30, 2018.

Not a single witness testified that any instructions were given by Mr. Davis to bill for care coordination or planning when the services were not rendered. And even if the Court believes that Mr. Davis was treating his company as a "golden goose," he did not do so knowing that these specific bills for services under Counts 3 and 4 were submitted fraudulently.

      1. <u>The Tenth and Eleventh Circuit's Construction of "Knowingly" under § 1347</u>

<u>T</u>his leads to the principal of law articulated by the Tenth and Eleventh Circuits regarding the government's burden of proving that the defendant acted "knowingly" under 18 U.S.C. §1347, or knowledge of falsity. These circuits have articulated that, "in a health care fraud case,

the defendant must be shown to have known that the claims submitted were, in fact, false." *United States v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007); *see also United States v. Ifediba*, 46 F.4th 1225, 1242 (11th Cir. 2022) (same quote as *Medina*); *United States v. Clay*, 832 F.3d 1259, 1313 (11th Cir. 2016) (the government bore the burden of proving "knowledge of falsity"); *United States v. Laughlin,* 26 F.3d 1523, 1526 (10th Cir. 1994) (defendant "must have known at the time he was making such claims that they were, in fact, false.").

In all of the health care fraud cases reviewed in the Fourth Circuit, none have presented the question posed by Mr. Davis to this Court: whether the government must prove beyond a reasonable doubt under § 1347 that the owner of, or supervisor of, a health care company must be shown to have had actual knowledge of the specific charged claims for health care reimbursement. Mr. Davis submits to the Court that, especially with a company that processed thousands of claims a year, most of which were lawful and legitimate, the appropriate burden on the government is to prove that the charged defendant has actual knowledge of the charged claims, as the Tenth and Eleventh Circuits have found. Mr. Davis's signature did not appear on these claims; there is no evidence that he ever reviewed these specific claims; and there is no evidence that he was aware of the particular services being provided to these children on these specific dates. There is nothing in the record to support the premise that he was aware of these particular claims for payment.

Under the § 1347 legal standard which requires proof that a defendant acted "knowingly," the government must demonstrate that a defendant had "knowledge of the facts that constitute the offense." *See Dixon* and *Bryan*. The government has failed to meet this burden. However, when the law of the Tenth and Eleventh Circuits are considered with the

specific facts presented here, that conclusion becomes even clearer. There is no evidence that Mr. Davis knew "that the claims submitted were, in fact, false." Let alone evidence of proof beyond a reasonable doubt.

For these reasons, the Court must find Mr. Davis not guilty of Counts 3 and 4.

### E. Conclusion

Based on the evidence presented at trial, and the law that this Court applies to the evidence, the Court must find Mr. Davis not guilty of all counts under the indictment.

Respectfully submitted,
**Richard Davis**

By:  /s/
Robert J. Wagner
Va. Bar No. 27493
Attorney for Mr. Davis
Robert J. Wagner, PLC
101 Shockoe Slip, Suite J
Richmond, VA 23219
(804) 814-8172
(804) 494-5620 (fax)
robwagnerlaw@gmail.com